UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERIC SMITH,

                Plaintiff,

v.

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE OFFICERS, DETECTIVE JASON BARR, DETECTIVE PATRICK AGUGLIARO, and POLICE OFFICERS JOHN DOES,

                Defendants.

**MEMORANDUM & ORDER**
21-CV-02280 (HG) (PK)

**HECTOR GONZALEZ**, United States District Judge:

    This action arises out of the arrest of Plaintiff Eric Smith by New York City Police Department ("NYPD") officers on December 5, 2008.  Plaintiff brings the present action against the arresting officers, Defendants Jason Barr and Patrick Agugliaro (the "Individual Defendants"), the City of New York (the "City"), the NYPD, "New York City Police Officers,"[1] and an unspecified number of John Doe NYPD officers.  ECF No. 1 (Complaint).  The Complaint alleges nine causes of action, which can be grouped into the following categories:  (1) state law claims for malicious prosecution, fabrication of evidence, intentional infliction of emotional distress, and abuse of process against the Individual Defendants and the City; (2) state law claims for negligent hiring and supervision, and respondeat superior against the City; (3) federal claims under 42 U.S.C. § 1983 against the Individual Defendants for malicious

---

[1]     Because Plaintiff has separately named the NYPD as a Defendant, the Court interprets Defendant "New York City Police Officers" as additional John Doe officers, and refers to "New York City Police Officers" together with the Defendant "Police Officers John Does" as the "Doe Defendants."

prosecution, malicious abuse of process, and the denial of a fair trial; and (5) a federal *Monell* claim against the City.[2] ECF No. 1 at ¶¶ 18–77. The Individual Defendants and the City (the "Moving Defendants") move for summary judgment seeking dismissal of all claims brought against them. ECF No. 41 (Defendants' Motion for Summary Judgment). For the reasons set forth below, the Court grants in part Defendants' motion for summary judgment and dismisses all of Plaintiff's claims except for Plaintiff's claim for denial of a fair trial claim against Defendant Barr.

## BACKGROUND[3]

On December 5, 2008, Defendants Barr and Agugliaro stopped the car Plaintiff was driving in Queens. ECF No. 36 ¶¶ 2–4 (Defendants' 56.1 Statement). Plaintiff was the only occupant of the car. *Id*. ¶ 4. Following the stop, Plaintiff was ordered out of the car by Defendant Barr. *Id*. ¶ 7. After Plaintiff exited the car, Defendant Barr recovered a handgun "either from Plaintiff's waistband or from the [car Plaintiff was driving]." *Id*. ¶ 8. Thereafter, Plaintiff was arrested for, among other things, criminal possession of a weapon in the second degree. *Id*. ¶ 11. Defendant Barr drafted Plaintiff's arrest report, which "states that Plaintiff failed to stop at a stop sign and was in possession of loaded .45 caliber handgun." *Id*. ¶¶ 12–13.

The parties disagree about statements made by Plaintiff while he was being transported to the precinct following his arrest. Plaintiff admits, however, that he told Defendants: "I don't

---

[2] It is not clear on the face of the Complaint which, if any, of the causes of action are actually brought against the NYPD or the Doe Defendants.

[3] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement, ECF No. 36, denotes that this Court has deemed the underlying factual allegations undisputed based on its review of the evidence and of Plaintiff's Responsive statement, *see* ECF No. 38 (Plaintiff's Response to Defendants' 56.1 Statement). Any citation to Defendants' 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

hang out with criminals or know people with guns or anything. And the only person that I knew that definitely had a gun is this guy that attacked my cousin." ECF No. 38 ¶ 14. Plaintiff further admits that he made additional statements about the individual who allegedly assaulted his cousin. *Id*. ¶¶ 15–18.

Following the arrest, the Queens County District Attorney's Office presented Plaintiff's case to the grand jury. ECF No. 36 ¶ 23. Defendant Barr testified before the grand jury. *Id*. ¶ 24. On June 4, 2009, Plaintiff was indicted by the grand jury and charged with two counts of criminal possession of a weapon in the second degree and two counts of disobeying a traffic control device. *Id*. ¶ 25.

Before his first trial on the indictment, Plaintiff moved to suppress the gun and his post-arrest statements. *Id*. ¶ 26. At the suppression hearing, Defendant Barr testified, both on direct and cross-examination, about the car stop, the recovery of the gun from Plaintiff's waistband, the arrest of Plaintiff, and the statements made by Plaintiff following his arrest. *Id*. ¶¶ 28–42; *see also* ECF No. 38 ¶ 42. Following the hearing, in a written decision, the hearing court denied the motion to suppress. ECF No. 36 ¶ 46. In its decision, the hearing court credited Defendant Barr's testimony regarding the circumstances surrounding the car stop and arrest of Plaintiff, including that the gun was recovered from Plaintiff's waistband. *See generally* ECF No. 35-15 (Suppression Order). The hearing court further found, as Defendant Barr testified, that following his arrest Plaintiff "stated that someone had threatened his family and that he needed the gun for his own protection." *Id*. at 2–3.[4]

Plaintiff went to trial in July 2010. Before the jury reached a verdict, the trial court declared a mistrial during jury deliberations because one juror had told other jurors about the

---

[4] The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

3

juror's discussion with a friend, who was a lawyer, regarding the gun possession charges. ECF No. 36 ¶¶ 47–52. Plaintiff was retried in 2016. At his second trial, both Defendants Barr and Agugliaro testified. *Id.* ¶ 58. Defendant Barr testified about the events leading up to the arrest of Plaintiff, including the recovery of the gun from his waistband. *Id.* ¶¶ 59–71. Defendant Agugliaro's testimony was largely consistent with Defendant Barr's. *Id.* ¶¶ 78–87. Neither Defendant was asked about Plaintiff's post-arrest statement that he needed the gun for protection. *Id.* ¶¶ 77, 92. The jury found Plaintiff guilty of two counts of criminal possession of a weapon in the second degree and one count of failure to obey a traffic control device. *Id.* ¶ 93. On appeal, the Appellate Division reversed Plaintiff's conviction. It found that double jeopardy precluded a retrial because there was an insufficient basis in the record for the declaration of a mistrial during the first trial. *Id.* ¶¶ 94–95; *see also People v. Smith*, 111 N.Y.S.3d 46, 47–48 (N.Y. App. Div. 2019).

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[5] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the

---

[5] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing complaint).

## DISCUSSION

### I. Plaintiff Has Failed to State a Claim for Malicious Prosecution

In order to prevail on a malicious prosecution claim "under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021).

As an initial matter, the Court rejects Defendants' argument that New York's automobile presumption alone gave them probable cause to charge Plaintiff. ECF No. 42 at 11. That presumption provides that the presence of a firearm in an automobile "is presumptive evidence of its possession by all persons occupying such automobile." N.Y. Pen. L. § 265.15(3). The sole decision that Defendants cite in support of the argument that this presumption gives them probable cause held that the automobile presumption created sufficient probable cause to *arrest* the plaintiffs in that case and, therefore, defeated their *false arrest* claim. *Matthews v. City of*

5

*New York*, 889 F.Supp.2d 418, 434–35 (E.D.N.Y. 2012).  But, since "[t]he automobile presumption is purely permissive" and can be rebutted, "[t]he application of the automobile presumption is not in itself sufficient to convict each of the automobile occupants with criminal possession of a weapon."  *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 393–94 (S.D.N.Y. 2016).  Accordingly, "[D]efendants' contention that the application of the automobile presumption provides probable cause as a matter of law" is insufficient to defeat a claim for malicious prosecution.  *Id.* at 394 (denying motion to dismiss malicious prosecution claim).

Nevertheless, Plaintiff's malicious prosecution claim fails because his indictment by a grand jury creates a presumption that probable cause existed to bring the charges against him, and Plaintiff has not met his burden of rebutting that presumption.  "[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.  To rebut this presumption, the plaintiff bears the burden of establishing that the indictment was produced by such fraud or bad-faith police misconduct."  *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017) (emphasis in original).  Meeting this burden "requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct."  *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (holding that defendant, who had been a cooperating witness in the underlying criminal matter from which the malicious prosecution claim arose, was entitled to summary judgment on malicious prosecution claim and rejecting argument that "the indictment must have been procured by perjury" simply because defendant-witness testified before the grand jury).

Although Defendant Barr testified before the grand jury, Plaintiff cannot meet his burden of showing that the grand jury's decision to indict Plaintiff was based on allegedly false

6

testimony because he has not presented *any* evidence whatsoever showing what information was presented to the grand jury, including what Defendant Barr said in his testimony, and has not presented any evidence that Defendant Agugliaro was involved with the grand jury process in any way. *See, e.g., Jessamy v. Jakasal*, No. 21-cv-214, 2022 WL 1669512, at *2 (2d Cir. May 26, 2022) (affirming summary judgment dismissing malicious prosecution claim where plaintiff "ha[d] not offered any evidence, aside from his own speculation, that the grand jury indictment was procured by fraud, perjury, suppression of evidence, or bad faith"); *McGrier v. City of New York*, 849 F. App'x 268, 271 (2d Cir. 2021) (affirming summary judgment dismissing malicious prosecution claim because plaintiff did not "establish what occurred in the grand jury").[6]

## II. Plaintiff Has Failed to State a Claim for Malicious Abuse of Process

Plaintiff's claim for malicious abuse of process likewise fails. To state an abuse of process claim, a plaintiff must show that defendants "aimed to achieve a collateral purpose

---

[6] The malicious prosecution claim against Defendant Agugliaro also fails for the independent reason that he did not initiate Plaintiff's prosecution. Other than providing testimony at both criminal trials, Defendant Agugliaro's role in the prosecution was limited. Plaintiff has not come forward with any evidence that Agugliaro forwarded false information to the District Attorney's Office. Instead, Plaintiff argues that the fact that Agugliaro testified at Plaintiff's trial that he merely spoke with prosecutors at some point between when Plaintiff was arrested and when he gave his testimony, without any other information about what he said, is enough to support a claim for malicious prosecution. ECF No. 51 at 25 (Plaintiff's Opposition). The Court disagrees. To hold Agugliaro liable for malicious prosecution, he had to have "play[ed] an *active* role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (emphasis added). In other words, he "must do more than report the crime or give testimony." *Id.*; *see also Burgess v. DeJoseph*, 725 F. App'x 36, 40 (2d Cir. 2018) (holding that an officer's conduct in initiating the criminal proceeding has to be "active or beyond the normal police tasks of reporting information or giving testimony"); *Pierre v. City of New* York, 531 F. Supp. 3d 620, 626 (E.D.N.Y. 2021) (granting summary judgment to defendants on plaintiff's malicious prosecution because plaintiff could not prove that defendants initiated or continued any criminal proceeding against him because the record was devoid of evidence that "the defendants played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act"). Plaintiff has failed to show what more Defendant Agugliaro did, and therefore his claim of malicious prosecution as to Agugliaro is dismissed for this reason as well.

7

beyond or in addition to his criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (explaining that "in New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."). A plaintiff cannot merely assert that the "defendants acted with an improper *motive*" when prosecuting him; he must instead show that the defendants "had an ulterior *purpose* or *objective* in facilitating his prosecution." *Id.* at 88 (emphasis in original). Plaintiff asserts that Defendants' collateral purpose was to "further the reputation" of the NYPD's Anti-Crime Unit, and in particular the unit's "reputation for confiscating weapons." ECF No. 51 at 31. But Plaintiff has not cited a single piece of evidence to support his assertion that Defendants sought to achieve that purpose. *Id.* That is not surprising given, as Defendants correctly point out, *see* ECF No. 52 at 13 (Defendants' Reply), there is no evidence in the record about the Anti-Crime Unit aside from basic facts, such as that the Individual Defendants were assigned to that unit at the time they arrested Plaintiff, and that the unit sought to prevent crime before it occurred. ECF Nos. 35-2, 35-5, 35-8, 35-18, 50-1 (Exhibits in Support of and Opposition to Motion for Summary Judgment).

Plaintiff's failure to introduce any evidence suggestive of Defendants' supposed collateral purpose at the summary judgment stage therefore requires dismissal of his malicious abuse of process claim. *See Kanciper v. Lato*, 718 F. App'x 24, 28–29 (2d Cir. 2017) (affirming summary judgment dismissing abuse of process claim because plaintiff "failed to put forth evidence establishing a collateral objective for her prosecution"); *Okudinani v. Rose*, 779 F. App'x 768, 773 (2d Cir. 2019) (affirming summary judgment dismissing abuse of process claim

8

because plaintiffs "ha[d] not adduced evidence sufficient to raise a triable issue of fact" supporting defendants' purported collateral objective); *Abreu v. Romero*, 466 F. App'x 24, 26 (2d Cir. 2012) (affirming summary judgment dismissing abuse of process claims because plaintiff "proffered no evidence to suggest that the defendants had a collateral objective when they arrested and prosecuted him").

### III. Plaintiff Has Failed to State a Fair Trial Claim Against Defendant Agugliaro but Has Stated a Narrow Fair Trial Claim Against Defendant Barr

"To prove a Section 1983 fair trial claim, a plaintiff must establish that (1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." *Kee*, 12 F.4th at 168. Unlike a malicious prosecution claim, probable cause to charge a plaintiff is not a defense to a claim that the plaintiff was denied the right to a fair trial "based on an officer's provision of false information to prosecutors." *Frost v. New York City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020). The presumption of probable cause created by the grand jury's indictment of Plaintiff, therefore, does not defeat Plaintiff's claim that he was denied a fair trial. But that claim separately fails as to Agugliaro because Plaintiff has not shown that he created false information that he forwarded to prosecutors. However, as to Barr, the Court finds that Plaintiff has raised sufficient disputes of material fact to prevent a determination as a matter of law that Barr did not create and forward false information to prosecutors regarding whether the gun was recovered from Plaintiff's waistband or from the car and regarding whether Plaintiff made any statements to the officers after the gun was recovered.

Much of Plaintiff's opposition brief on the fair trial issue focuses on Barr's and Agugliaro's trial testimony. *See* ECF No. 51 at 10–25. But the Supreme Court has held that a

9

defendant is immune from a Section 1983 claim based on testimony that the defendant gave at trial or before a grand jury. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). The Second Circuit has confirmed that this immunity applies to claims that a plaintiff was denied the right to a fair trial. *See, e.g.*, *Morales v. City of New York*, 752 F.3d 234, 237–38 (2d Cir. 2014) (affirming dismissal of plaintiff's fair trial claim pursuant to Rule 12(b)(6)); *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (affirming summary judgment dismissing fair trial claim). Although Plaintiff's opposition brief also cites testimony provided during a pretrial suppression hearing, *see* ECF No. 50-2, the Second Circuit has extended this immunity to Section 1983 fair trial claims based on testimony given during a pretrial hearing. *See Daloia v. Rose*, 849 F.2d 74, 76 (2d Cir. 1988) ("[W]e hold that police officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony."); *see also Gonzalez v. Bart*, No. 21-cv-1379, 2023 WL 8654198, at *5 (N.D.N.Y. Dec. 13, 2023) (granting motion to dismiss denial of fair trial claim on same ground).

Therefore, Plaintiff's claim that Defendants denied his right to a fair trial must be based on other allegedly false information—separate from their testimony—that Defendants provided to prosecutors. Beyond the Individual Defendants' testimony, Plaintiff's theory that the Individual Defendants provided false information to prosecutors primarily focuses on the fact that Defendant Barr's NYPD arrest report, ECF No. 50-7, and his NYPD complaint report, ECF No. 50-8, note only that at the time of Plaintiff's arrest he "was found to be in possession of a loaded . . . handgun," without noting whether the gun was retrieved from the car Plaintiff was driving or from Plaintiff's waistband, ECF No. 51 at 5, 12, and that Barr's memo book, ECF No. 50-9, is likewise silent on this point. ECF No. 51 at 5. Plaintiff also argues that neither the

10

reports nor the memo book mention Plaintiff's alleged admission that the gun was his. *Id*. at 5, 19.[7]

Plaintiff contrasts these records with a report prepared the next day by the intake bureau of the District Attorney's Office (the "Intake Report"), based in part on an interview with Defendant Barr, which specifically notes that the gun was recovered from Plaintiff's waistband and that Plaintiff admitted to needing the gun for "protection." ECF No. 51 at 6 (citing ECF No. 50-10). Although not highlighted by Plaintiff in his opposition, the criminal court complaint sworn to by Defendant Barr (the "Criminal Complaint") asserts that the gun was recovered from Plaintiff's waistband and that Plaintiff admitted that he needed the gun for protection. ECF No. 35-11. But Defendant Barr's NYPD reports and memo book do not contain facts that contradict the report written by the District Attorney's office or the criminal court complaint. *See* ECF Nos. 50-7, 50-8, 50-9. For example, none of those documents affirmatively states that Defendant Barr recovered the gun from inside the car Plaintiff was driving rather than from his waistband or that Plaintiff denied that the gun was his. *Id.* These documents are simply silent about the specific location from where Defendant Barr recovered the gun and whether Plaintiff made any statements about the ownership of the gun. *Id.* The fact that these documents contain different details from documents prepared by the District Attorney's Office but are not in any way

---

[7]   Defendants correctly point out in their Reply that none of these reports are properly before the Court because Plaintiff failed to reference them in his Rule 56.1 counterstatement, either in responding to Defendants' statement of undisputed facts or in a separate statement of additional material facts. ECF No. 52 at 2. The NYPD reports and Defendant Barr's memo book excerpt were submitted by Plaintiff as exhibits to an attorney declaration filed on June 1, 2023, as part of Plaintiff's opposition to the motion. ECF No. 50 (Kerrigan Declaration). By contrast, Plaintiff filed his Rule 56.1 counterstatement almost six months earlier, on January 24, 2023, as part of the premotion conference process set forth in this Court's Individual Practices. ECF No. 38. Notwithstanding Plaintiff's failure to submit these documents with his counterstatement, the Court will nevertheless consider these exhibits when deciding the motion.

11

contradictory to what is stated in the prosecutor's documents (in fact they are consistent—having a gun in one's waistband constitutes possession), does not show that there is a genuine issue as to any material fact.

Inexplicably, Plaintiff spends significantly less time in his brief contrasting the information provided by Defendant Barr in the Criminal Complaint and the Intake Report with his own sworn testimony given at both his deposition in connection with this case, *see* ECF Nos. 35-6, 50-12, and at his first trial, *see* ECF No. 35-10.  Plaintiff testified during his deposition that Defendant Barr retrieved the gun from the car rather than from his waistband and that Plaintiff immediately denied to Defendant Barr that the gun was his.  ECF No. 51 at 13, ECF No. 50-12 at 3–5; ECF No. 35-6 at 11–14.  At his first trial, Plaintiff testified that he did not tell Barr that he needed the gun for protection, that he told Barr the gun was not his, and that the gun was not recovered from his waistband.  ECF No. 35-10 at 2–6.  Plaintiff points to no evidence that contradicts Barr's recollection of the events surrounding his arrest beyond his own testimony, and as a result, it is a very close call whether Plaintiff's testimony alone is sufficient to create an issue of material fact regarding the veracity of the information that Barr forwarded to the District Attorney's Office.[8]

---

[8] The Court also notes that while Plaintiff argues in his opposition that the gun was not recovered from his waistband, *see, e.g.*, ECF No. 51 at 13, he nevertheless appears to concede as much in his 56.1 counterstatement.  In Defendants' 56.1 statement, they allege with various supporting citations to the record that "Officer Barr recovered a .45 caliber semiautomatic handgun *either* from Plaintiff's waistband or from the white Pontiac."  ECF No. 36 ¶ 8 (emphasis added).  In his counterstatement, even though Defendants' statement is set forth in the disjunctive, Plaintiff, who is represented by counsel, admits Defendants' entire statement without any conditions or limitations.  *See* ECF No. 38 ¶ 8.  By contrast, Plaintiff's counterstatement, which only responds to Defendant's stated facts and does not provide a separate statement of additional material facts, does on various occasions admit facts with conditions, *see, e.g.*, ECF No. 38 ¶¶ 13, 19, 22, 35, 36, 44, 69, 87, 99, 101, or otherwise denies or attempts to clarify statements of fact put forth by Defendants, *see, e.g., id.* ¶¶ 14, 15, 38, 42, 66, 74, 75, 76, 89, 91, 97, 98, 102, 103, 104.  Local Rule 56.1 provides that "[e]ach numbered paragraph in the

12

The Second Circuit has held that a "1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact" when that testimony is "consistent" and not "wholly improbable." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019); *see also Marom v. Blanco*, No. 15-cv-2017, 2019 WL 3338141, at *9 (S.D.N.Y. July 25, 2019) (denying summary judgment on fair trial claim where plaintiff's testimony contradicted records created by defendant regarding plaintiff's behavior at the time of arrest because "[t]his testimony creates a triable issue with respect to the element of fabrication"). Plaintiff has consistently denied that the gun was in his waistband and that he told the officers he needed the gun for protection. Because Plaintiff's testimony is not wholly improbable and because, "[f]or purposes of summary judgment, we must assume that the jury will credit [P]laintiff's version of the events," *Kee*, 12 F.4th at 168, the Court must conclude that Plaintiff has done just enough to create an issue of material fact as to whether Barr forwarded false information to prosecutors in the form of the Criminal Complaint and Intake Report. *See, e.g.*, *Coleman v Cnty. of Nassau*, No. 16-cv-6099, 2021 WL 5447323, at *13 (E.D.N.Y. Nov. 22, 2021) (denying summary judgment on plaintiff's fair trial claim because plaintiff's testimony conflicted with a detective's testimony regarding where the contraband at issue was found);

---

statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *See Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *1 (2d Cir. Nov. 21, 2023) (holding that "the District Court acted within its discretion when it deemed admitted the facts asserted in the [defendants'] Local Rule 56.1 statement because they were not specifically controverted by [plaintiff] in the manner demanded by Local Rule 56.1"). Cognizant that it must construe any factual ambiguities and inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion, the Court will not, although it could, construe Plaintiff's response to paragraph eight of Defendants' 56.1 statement as an admission that the gun was, in fact, recovered from Plaintiff's waistband, based on his failure to condition his response to the disjunctive statement of fact propounded by Defendants.

*Santiago v. City of Yonkers*, No. 21-cv-764, 2023 WL 2648649, at *10–11 (S.D.N.Y. Mar. 27, 2023) (holding that "[p]laintiff's deposition testimony creates a genuine issue of material fact as to whether [the officer who signed plaintiff's criminal complaint] fabricated evidence that was likely to influence a jury's decision and forwarded that information to prosecutors" because if a jury were to credit plaintiff's version of events, "that jury reasonably could find that [the officer] fabricated the narrative in the criminal complaint").[9]

However, Defendants' motion for summary judgment on Plaintiff's denial of the right to a fair trial claim against Defendant Agugliaro is granted. As Defendants correctly identify, Plaintiff points to no evidence in his opposition, and there is no evidence in the record, that suggests Agugliaro created or forwarded any information, false or otherwise, to prosecutors. *See generally* ECF No. 51. Unlike Defendant Barr, Agugliaro did not generate any reports related to Plaintiff's arrest. As previously noted, other than providing testimony at both criminal trials, Defendant Agugliaro's role in the prosecution was limited. As with the malicious prosecution claim, Plaintiff has not come forward with any evidence that Agugliaro forwarded false information to the District Attorney's Office. Having failed to show anything Defendant

---

[9] The Court also rejects Defendants' argument that qualified immunity entitles Barr to summary judgment dismissing Plaintiff's claim that he was denied a fair trial. *See* ECF No. 42 at 21–22. "[Q]ualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find." *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015) (affirming denial of defendant's post-trial motion seeking dismissal of fair trial claim based on qualified immunity); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129–30 (2d Cir. 1997) (holding that disputed issues of fact related to whether police officer defendant fabricated plaintiff's confession precluded summary judgment dismissing fair trial claim either on the merits or because of qualified immunity). The Court has held that disputed questions of fact exist regarding whether Defendant Barr provided false information to the District Attorney's Office about his retrieval of a firearm and Plaintiff's supposed confession, and since fabricating such information would violate clearly established law, the Court cannot grant Barr summary judgment on qualified immunity grounds.

14

Agugliaro did beyond testify and participate in Plaintiff's arrest, the fair trial claim against Defendant Agugliaro is dismissed. *See, e.g.*, *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013) (granting summary judgment and dismissing plaintiff's fair trial claim because plaintiff failed to allege with specificity what false information the defendants created or forwarded to the District Attorney's Office); *Bryant v. Serebrenik*, No. 15-cv-3762, 2016 WL 6426372 at *6 (E.D.N.Y. Oct. 28, 2016) (granting summary judgment and dismissing plaintiff's fair trial claims against certain defendants because there was no evidence that those defendants participated in creating and forwarding to prosecutors the allegedly false information).

### IV.    Plaintiff Has Abandoned His *Monell* and State Law Claims

Plaintiff's Eighth Cause of Action asserts a claim against the City under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). The *Monell* claim, however, must be dismissed because Plaintiff has waived it by failing to address it in his opposition to Defendants' motion for summary judgment. Defendants argued in their opening brief that Plaintiff's *Monell* claim must be dismissed because he cannot introduce any evidence that the City maintained an unconstitutional policy or custom, especially since Plaintiff failed to depose a representative of the City pursuant to Rule 30(b)(6) or to "obtain any information regarding City policies during discovery." *See* ECF No. 42 at 22–23. Plaintiff's opposition brief does not respond to, or in any way mention, his *Monell* claim. *See generally* ECF No. 51. The Second Circuit has expressly stated that, when a party is represented by counsel and files an opposition to a motion for summary judgment that addresses some but not all issues raised in the motion, a district court may "infer from [the] party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (affirming summary judgment dismissing claims based on plaintiff's waiver); *Spagnuolo v. Howell*, 814 F. App'x 614, 618–19 (2d Cir. 2020) (holding that *pro se* attorney plaintiff asserting

15

Section 1983 claims waived claims not addressed when responding to defendants' motion for summary judgment). Under these circumstances, a finding of waiver is appropriate, and the Court grants summary judgment dismissing Plaintiff's *Monell* claim. *See Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 412 (E.D.N.Y. 2022) (granting summary judgment dismissing *Monell* claim because, "[g]iven plaintiffs' failure to respond to defendants' arguments regarding *Monell* liability, the [c]ourt considers the *Monell* claim abandoned"); *Glover v. City of New York*, No. 15-cv-4899, 2018 WL 4906253, at *34 (E.D.N.Y. Oct. 9, 2018) (granting summary judgment dismissing plaintiff's *Monell* claims because "[t]he [c]ourt f[ou]nd[] that Plaintiff ha[d] abandoned her original *Monell* theory" under similar procedural circumstances).[10]

Plaintiff has likewise abandoned his various state law claims – causes of action numbers one through five and nine. As with the *Monell* claim, Defendants argued in their opening brief that Plaintiff's state law claims must be dismissed for various reasons. *See* ECF No. 42 at 24–25. In response, Plaintiff's opposition brief does not even mention the state law claims. *See generally* ECF No. 51. Accordingly, the Court grants summary judgment dismissing Plaintiff's state law claims.[11]

---

[10] The Complaint names the NYPD as a Defendant separate from the City. However, the Complaint does not make any specific claim against the NYPD that it does not make against the City. *See generally* ECF No. 1. In any event, "the NYPD is a non-suable agency of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Maier v. New York City Police Dep't*, No. 08-cv-5104, 2009 WL 2915211, at *2 (E.D.N.Y. Sept. 1, 2009) ("[T]he New York City Police Department is an organizational subdivision of the City of New York, lacking independent legal existence and as such is not a suable entity."); *Iosilevich v. City of New York*, No. 22-cv-3714, 2023 WL 3231597, at *2 (E.D.N.Y. May 3, 2023) (dismissing plaintiff's claims against the NYPD because it is not a suable entity). Accordingly, all claims against the NYPD are dismissed for the separate reason that the NYPD is not an entity that can be sued. *See Fraser v. City of New York*, No. 20-cv-5741, 2022 WL 3045524, at *2 (E.D.N.Y. Aug. 1, 2022) ("The NYPD is an agency of the City of New York and is therefore a non-suable entity.").

[11] Alternatively, Plaintiff's state law claims for malicious prosecution (cause of action number one) and abuse of process (cause of action number five) against the Individual

### V. Plaintiff's Claims Against the Doe Defendants

Although Defendants' motion for summary judgment does not address the Doe Defendants, the Court *sua sponte* dismisses Plaintiff's claims against them. As an initial matter, the Complaint fails to assert any claims against these Defendants other than to lump them together with the named Defendants in just two paragraphs of the Complaint without any specificity about their alleged conduct. *See* ECF No. 1 ¶¶ 14, 31. Plaintiff also has not served the Doe Defendants—Plaintiff's purported "affidavits of service" for the "New York City Police Officers" and "Police Officers John Does" state that the process server was "unable to effect service" because someone at the address where he attempted to serve the Doe Defendants told him that they "[would] not accept for fictitious persons." ECF Nos. 8-2, 8-3 (Affidavits of Service). No Doe Defendants have appeared in this action since Plaintiff filed his complaint on April 26, 2021, and discovery in this case closed on November 11, 2022.

"[W]here, [as here] a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the defendant's name, the plaintiff

---

Defendants must be dismissed for the same reasons that Plaintiff's federal claims for malicious prosecution and abuse of process were dismissed. *See generally* Sections I and II, *supra*; *see, e.g., Golden v. City of New York*, 418 F. Supp. 2d 226, 235 (E.D.N.Y. 2006) (granting summary judgment on plaintiff's federal claims for malicious prosecution and abuse of process, and holding that, "[s]ince claims for . . . malicious prosecution[] and abuse of process are no different whether brought under Section 1983 or state law, summary judgment is also appropriate in favor of defendants on plaintiff's state law claims for . . . malicious prosecution[] and abuse of process"); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 226 (E.D.N.Y. 2010) ("Claims for malicious prosecution, brought under § 1983 . . . are substantially the same as claims for malicious prosecution under state law."); *Smith v. City of New York*, No. 04-cv-3286, 2010 WL 3397683, at *14 (S.D.N.Y. Aug. 27, 2010) ("Because plaintiff's federal claim[] for . . . malicious prosecution [is] dismissed on summary judgment, . . . to the extent plaintiff brings analogous state law claims, those claims are dismissed as well because the elements are the same."); *Coggins v. Cnty. of Nassau*, 254 F. Supp. 3d 500, 519–520 (E.D.N.Y. 2017) (granting defendants' summary judgment on plaintiff's abuse of process claims because plaintiff's efforts to establish that defendants behaved to obtain a collateral objective were "plainly . . . insufficient to sustain a claim for abuse of process under New York law or Section 1983").

17

simply cannot continue to maintain a suit against the John Doe defendant." *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017); *see also House v. City of New York*, 18-cv-6693, 2020 WL 6891830, at *6 (S.D.N.Y. Nov. 24, 2020) (granting summary judgment and dismissing claims against John Doe defendant because plaintiff had neither "moved to substitute the name of an individual officer nor indicated that he has learned who that person is"); *Young v. Cabrera*, No. 18-cv-3028, 2020 WL 7042759, at *8 (E.D.N.Y. Nov. 30, 2020) ("[I]t is well settled that where discovery has closed, the proper course is to dismiss the John Doe [d]efendants without prejudice."); *Tortora v. City of New York*, No. 15-cv-3717, 2019 WL 9100369, at *25 (E.D.N.Y. Mar. 30, 2019) (dismissing claims against John and Jane Doe defendants at summary judgment stage where plaintiff had not identified the defendants in the three years since the action was commenced).

\*     \*     \*

For the sake of clarity, and to assist the parties as they prepare for trial, the Court provides a summary of its decision as set forth in more detail herein. The Court grants Defendants' motion for summary judgment in part and dismisses Plaintiff's claims against all Defendants except his Section 1983 claim for denial of the right to a fair trial against Defendant Barr. The only claim that survives for trial is Plaintiff's fair trial claim against Barr predicated on the information he provided to the District Attorney's Office in the Criminal Complaint and the Intake Report regarding: (1) from where he recovered the gun; and (2) what (if anything) Plaintiff said at the time of his arrest.

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment. *See* ECF No. 41. The Clerk of Court is respectfully

directed to terminate the following Defendants from the docket: City of New York; NYPD; New York City Police Officers; Officer Agugliaro; and "Police Officers John Does." The remaining parties' proposed joint pretrial order is due on or before June 12, 2024. The remaining parties are reminded that their joint pretrial order must comply with the requirements set forth in Section VI.B. of the Court's Individual Practices.

SO ORDERED.

                                             */s/ Hector Gonzalez*
                                             HECTOR GONZALEZ
                                             United States District Judge

Dated: Brooklyn, New York
        May 13, 2024